**Opinion issued August 3, 2021**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-01079-CR

———————————

**CHARLES R. JONES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 179th District Court**
**Harris County, Texas**
**Trial Court Case No. 1510058**

---

## MEMORANDUM OPINION

Charles Jones was convicted of aggravated robbery and sentenced to 30 years' confinement. His appellate counsel filed an *Anders* brief,[1] declaring there

---

[1]    *See Anders v. California*, 386 U.S. 738 (1967).

were no nonfrivolous bases for appeal. After this court affirmed his conviction,[2] the Court of Criminal Appeals granted Jones's pro se petition for discretionary review and remanded.[3]

On remand, Jones presents three issues. In the first two, Jones challenges the sufficiency of the evidence and the trial court's ruling to denying his motion for mistrial. The State opposes both issues. In the third issue, Jones contends that the case must be remanded for a new punishment trial because the State failed to properly invoke the enhancement punishment range. The State concedes the third issue and agrees that remand is proper.

Because we overrule Jones's first two issues and sustain his third, we affirm the portion of the trial court's judgment finding Jones guilty of aggravated robbery, reverse the portion of the judgment imposing a sentence of 30 years' confinement, and remand for a new punishment trial.

## Background

K. Wright is a FedEx driver. In May 2016, she was driving another employee's route. One of her stops was at an AT&T store in Webster to deliver

---

[2]   *Jones v. State*, No. 01-18-01079-CR, 2020 WL 1466982 (Tex. App.—Houston [1st Dist.] Mar. 26, 2020) (mem. op., not designated for publication) (per curiam), *vacated*, PD-0380-20, 2020 WL 5814603 (Tex. Crim. App. Sept. 30, 2020) (per curiam).

[3]   *Jones v. State*, PD-0380-20, 2020 WL 5814603 (Tex. Crim. App. Sept. 30, 2020) (per curiam).

boxes of cell phones. As she got out of her truck to begin the delivery, a man got out of an SUV and walked toward her. He was wearing a FedEx shirt and had a white hockey mask covering his face. She thought it was a coworker playing a joke. But then she saw that he had a gun. The robber got into her truck and told her to drive away.

Two people saw Wright being robbed. A. Stromeyer and M. Lutkenhaus were on their way to the AT&T store when they saw the robber point the gun at Wright. Lutkenhaus has a license to carry a concealed weapon. He drew his weapon and approached the FedEx van, but when Wright saw Lutkenhaus, she thought he was assisting the robber, not trying to help her. Lutkenhaus could not find a position to safely help Wright. When the FedEx truck began to drive away, Lutkenhaus got back into his vehicle with Stromeyer and followed the truck.

The robber had Wright stop the truck at a second location. He asked her which box had the phones in it. He could not determine which boxes were the correct ones, so he had Wright help him locate the boxes he was searching for. Wright found and gave him the AT&T boxes. Wright thought the robber would leave at that point, but he pointed the gun at her again and told her to get into the back of the FedEx truck. She did. Once he was in the front of the truck, she closed the door between the two spaces, opened the back of the truck, and ran into a nearby store for help. The robber drove away in the FedEx truck.

Meanwhile, Lutkenhaus and Stromeyer were on the phone with a 911 operator while they followed the FedEx truck. They did not see Wright run from the truck into the store. They thought she was still in the truck with the robber, so they continued to follow the FedEx truck to a third location at an apartment complex. Lutkenhaus and Stromeyer waited there for the police to arrive.

After the police arrived, as they were talking to Lutkenhaus, Lutkenhaus was told that a suspect had been detained and asked if he could attempt an identification. Lutkenhaus told the police that he would be unable to identify the robber by appearance because the robber wore a hockey mask to shield his face. But Lutkenhaus thought he could identify the robber by his clothing. Lutkenhaus said that the robber wore a white hockey mask, a black hoodie, and black gloves. The police showed Lutkenhaus a black hoodie and gloves that they found near where Jones was arrested. Lutkenhaus said they were the same items he saw the robber wearing earlier.

Sergeant M. Quintanilla with the Houston Police Department testified about encountering Jones. He was told that a stolen vehicle was left at an apartment complex. He was told that the suspect ran west. Quintanilla went that direction to a gas station. He saw a man run past him. Quintanilla followed and found Jones hiding behind a dumpster. Jones was taking off a black hoodie. Quintanilla began to give Jones demands. Jones complied and was arrested. Quintanilla recovered the

4

black hoodie, which had been shoved between the dumpster and the store wall. The police looked around the area for a weapon but did not locate one.

Quintanilla returned to the area the next day to search again for the weapon. He retraced the path between where the FedEx truck was recovered and where he arrested Jones. Along that path, he found some items in the shrubs. He found a black semiautomatic gun and a purple and black FedEx shirt. Quintanilla identified Jones in the courtroom as the person he arrested.

The police compared Jones's DNA sample to DNA found on the black hoodie stuffed between the dumpster and store. The DNA analysis determined that Jones was a major contributor of the DNA on the hoodie. The other items tested did not have enough DNA data for interpretation.

The police obtained a search warrant to search the phone that Jones had with him when he was arrested. Investigator N. Gates with the Harris County District Attorney's office testified about extracting data from the phone. The data was compiled into a report. Officer J. Scott testified about text messages detailed in the report. On the morning of the robbery, between 8:00 and 8:30 am, Jones sent four texts:

- U know Today Thurs I got some major shit going u forgot? No! I can't depend on to take ass for shit

- Just got a call from my home boy . . . I'm bout to miss some major major money on that truck . . . Thanks

- Just got a CAll from my boy I'm bout to miss out on some major major money . . . . . . . thanks

- Just got a call from my home boy we bout to miss the major load on FexEd jis

Thus, on the morning of the robbery of a FedEx truck, Jones sent text messages about a "major load on FedEx" and "major major money." One of those messages was to Jones's girlfriend. The police investigation determined that his girlfriend drives an SUV that matches the vehicle that the robber got out of when he approached the FedEx driver while holding a gun.

After the FedEx driver, the two eyewitnesses who followed the FedEx truck, and the police officers and investigators testified, the State rested. The defense rested without calling any witnesses. After closing arguments, the jury deliberated and returned a verdict of guilty on the charge of aggravated robbery.

At the punishment phase of the trial, the State had "pen packets" admitted into evidence. These documents included judgments of conviction and sentencing orders for past offenses. Each identified the convicted defendant as Charles Jones. The first was a judgment of conviction for the offense of burglary of a habitation with intent to commit theft. The date of the judgment was November 20, 1998. The judgment includes a notation that the conviction was appealed. There is no indication in the record of the appeal's outcome.

The second was a judgment of conviction for the offense of aggravated robbery. The date of the judgment was the same as the burglary conviction. This judgment also included a notation that it was appealed but no indication of the appeal's outcome.

Documentation of three other offenses were included in the pen packet. These convictions were for possession of a controlled substance in 1998, possession with intent to deliver in 2011, and credit card abuse in 2013.

There was only one witness during the punishment phase of the trial. R. Reed testified that the fingerprint he obtained from Jones on the day of trial matched the fingerprints on the criminal judgments of conviction and sentencing orders presented to the jury. In other words, the person whose fingerprints were taken upon sentencing for various past crimes is the same person charged for this aggravated robbery and identified in court as Charles Jones.

During closing arguments, the jury was told that, if they found that Jones had two prior enhancement offenses, based on the evidence presented, then the punishment range was between 25 years and life. The defense asked for a sentence on the lower end, arguing that Jones's past crimes were linked to drug use and the lack of a support system. The State asked for a 50-year sentence. The jury returned a sentence of 30 years. Jones appealed.

## Sufficiency of the evidence

In his first issue, Jones challenges the sufficiency of the evidence to support his conviction.

## A.     Standard of review

We review sufficiency of the evidence using the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). *See Brooks v. State*, 323 S.W.3d 893, 898–912 (Tex. Crim. App. 2010). Under that standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson*, 443 U.S. at 319; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider all reasonable inferences that may be drawn from the evidence in making our determination, including all direct and circumstantial evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Evidence is insufficient in four circumstances: (1) no evidence exists that is probative of an element of the offense in the record; (2) only a "modicum" of evidence exists that is probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the alleged acts do not establish the criminal offense charged. *See Jackson*, 443 U.S. at 314, 320; *Laster*,

275 S.W.3d at 518; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The jury has the exclusive role of evaluating the facts, the credibility of the witnesses, and the weight a witness's testimony should be given. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981); *Jaggers v. State*, 125 S.W.3d 661, 672 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). The jury may choose to believe all, some, or none of a witness's testimony. *See Davis v. State*, 177 S.W.3d 355, 358 (Tex. App.—Houston [1st Dist.] 2005, no pet.). And the jury alone must reconcile any conflicts in the evidence. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000).

Under the *Jackson* standard, we defer to the factfinder "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. If there are conflicts in the evidence, we must presume the factfinder resolved the conflicts in favor of the verdict and defer to that determination, as long as it is rational. *See Jackson*, 443 U.S. at 326; *Penagraph*, 623 S.W.2d at 343 ("A jury is entitled to accept one version of the facts and reject another or reject any of a witness'[s] testimony."). Contradictory evidence will not diminish the legal sufficiency of the evidence that supports the verdict. *See McDonald v. State*, 462 S.W.2d 40, 41 (Tex. Crim. App. 1970). If the evidence is insufficient, we must

reverse and enter an order of acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

## B. Legally sufficient evidence supports the judgment of conviction

The evidence was legally sufficient. Wright testified that a man wearing a FedEx shirt robbed her at gunpoint. Stromeyer and Lutkenhaus testified that they saw the robbery occur. They recall seeing the robber wear a black hoodie. A search of the area where Jones was arrested revealed a discarded FedEx shirt, a hidden black hoodie with Jones's DNA on it, and a gun matching the description given by Wright and Lutkenhaus. There was more. Lutkenhaus followed the FedEx truck from the site of the robbery to where it was abandoned. He and Stromeyer alerted the police to where the FedEx truck was abandoned. Jones was found shortly afterward by the police. He was behind a dumpster at a nearby property. The hoodie was stashed behind the dumpster. The FedEx shirt and gun were found along the path between the two locations. Moreover, a search of Jones's phone, which was taken from him when he was arrested, revealed text messages from Jones on the morning of the robbery discussing a "major load on FedEx" and "major major money." And the vehicle the robber exited to begin the robbery matched the vehicle of Jones's girlfriend—who was one of the people Jones texted that morning about a major load on FedEx.

While much of the evidence is circumstantial, its cumulative force provided more than a scintilla of evidence to support a reasonable conclusion that Jones was the FedEx robber. *See Jackson*, 443 U.S. at 320 (setting forth standard for legal insufficiency). To the extent there was any evidence suggesting otherwise, the jury has the exclusive role of weighing the evidence and the witnesses' credibility, and we will defer to their determinations as evinced by their verdict of guilt. *See id.* at 326; *McDonald*, 462 S.W.2d at 41.

### Ruling to Deny Mistrial

In his second issue, Jones challenges the trial court's denial of his motion for mistrial.

### A.    Standard of review and applicable law

A mistrial halts the trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). A trial court may properly exercise its discretion to declare a mistrial if an impartial verdict cannot be reached or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error. *Id.*

An outburst by a witness or other bystander "'which interferes with the normal proceedings of a trial will not result in reversible error unless the defendant shows a reasonable probability that the conduct interfered with the jury's verdict.'"

*Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009) (quoting *Landry v. State*, 706 S.W.2d 105, 112 (Tex. Crim. App. 1985)). Instructions to the jury are generally considered sufficient to cure improprieties, such as witness outbursts, because it is presumed that the jury will follow those instructions. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010); *Gamboa*, 296 S.W.3d at 580. We review the denial of a motion for mistrial under an abuse of discretion standard. *Coble*, 330 S.W.3d at 292; *Gamboa*, 296 S.W.3d at 580. An appellate court views the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). The ruling must be upheld if it was within the zone of reasonable disagreement. *Id.* Our determination of whether an error requires a mistrial is made by examining the particular facts of the case. *Ladd*, 3 S.W.3d at 567.

A mistrial is an appropriate remedy only in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). Its occurrence should be "exceedingly uncommon." *Williams v. State*, 417 S.W.3d 162, 175 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). Because it is an extreme remedy, a mistrial should be granted "only when residual prejudice remains" after less drastic alternatives are explored. *Barnett v. State*, 161

S.W.3d 128, 134 (Tex. App.—Fort Worth 2005), *aff'd*, 189 S.W.3d 272 (Tex. Crim. App. 2006).

## B. No abuse of discretion is shown on this record

As for the identity of the robber, Wright testified that she was robbed by an unknown man in a hockey mask. She testified that she did not "know what he looked like" because he wore his mask the entire time he was in her FedEx truck. On cross-examination, she again confirmed that she did not see the robber's face and could not identify him. She could only identify the robber by what he wore and the weapon he held: a FedEx shirt and a white hockey mask, along with a black, small gun.

Just after Wright testified, defense counsel moved for a mistrial. Counsel stated that he heard Wright blurt out as she was leaving the witness stand, "That's him," and argued that the statement was made near the jury. There is no indication in the record that anyone, other than defense counsel, heard the alleged statement.

The Court responded by instructing the jury that they were to disregard any statement by Wright that was made after leaving the stand, if they heard any statement. The trial court asked the jury if it understood their instruction, and the jurors replied in unison, "Yes." The trial court followed that instruction with a second instruction that the jurors were not to consider such statement during its

deliberations or even mention it. Jones made no further objection or motion on the matter.

An instruction to disregard is generally sufficient to cure prejudicial effects of an improper statement. *See Barney v. State*, 698 S.W.2d 114, 125 (Tex. Crim. App. 1985) (witness's reference to the defendant as an "ex-con" cured by instruction to disregard statement). And we generally presume the jury follows the trial court's instructions, though the presumption is rebuttable. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998); *Waldo v. State*, 746 S.W.2d 750, 752–53 (Tex. Crim. App. 1988).

Here, the witness had already testified that the robber's face was covered by a hockey mask throughout the robbery. On cross-examination, she confirmed that she did not see the robber's face and would be unable to identify him. Her only source of identifying him was by his clothing and gun. Her alleged statement after leaving the witness stand of "that's him" conflicts with her sworn testimony, just minutes earlier, that she could not identify the robber. This inconsistency weighs against a determination that the alleged statement was so extreme and prejudicial as to require a mistrial. Similar outbursts upon leaving the witness stand have, likewise, been held to be curable by an instruction to disregard. *See Jimenez v. State*, 298 S.W.3d 203, 213 (Tex. App.—San Antonio 2009, pet. ref'd) (witness, when not being questioned by either counsel, blurted out, "Well, I got to say it. Mr.

Jimenez planned the murder. I'm sorry, but he did," and the appellate court held that the event was curable by jury instruction to disregard); *see also* Jay M. Zitter, Annotation, EMOTIONAL MANIFESTATIONS BY VICTIM OR FAMILY OF VICTIM DURING OR IMMEDIATELY BEFORE OR AFTER OWN TESTIMONY DURING CRIMINAL TRIAL AS GROUND FOR REVERSAL, NEW TRIAL, OR MISTRIAL, 99 A.L.R. 6th 113 (2014) (discussing cases from multiple jurisdictions in which outbursts from witnesses were held to be curable by jury instruction); *cf. Gonzalez v. State,* No. 14-11-00995-CR, 2013 WL 396075 (Tex. App.—Houston [14th Dist.] Jan. 3, 2013, no pet.) (mem. op., not designated for publication) (trial court did not abuse its discretion in denying motion for mistrial although, as she was leaving the witness stand, the complainant held her hands in prayer and said "please" to the jury, given that trial court admonished jurors not to consider her plea and jurors confirmed they could disregard the plea).

Jones had the burden to rebut the presumption that the curative instruction was adequate. *Colburn*, 966 S.W.2d at 520. Jones presented no evidence on the matter. He did not try to establish a record of where the witness was when the statement was made, how close she was to the jury, whether any juror heard her statement, or the possibility that the jury would be unable to follow the trial court's instruction. The record is limited to counsel's own statement that counsel heard the remark. After the trial court gave the instruction, Jones dropped the matter, neither

15

seeking to establish a record on the event nor objecting that the instruction was insufficient.

The trial court gave a curative instruction. The jury stated that they understood the instruction. And Jones presented no evidence to rebut the presumption that the jury complied with the instruction. Given all the evidence—including Wright's testimony under oath that she could not identify the robber because his face was shielded throughout their encounter—and the trial court's instruction to the jury to disregard any statement she made once she left the witness stand, we cannot say that the prejudicial effect of the alleged statement was so severe as to nullify the instruction to disregard. Nor can we conclude that the trial court's refusal to use the extreme remedy of declaring a mistrial was outside the zone of reasonable judicial disagreement. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991). Thus, the trial court did not abuse its discretion.

Appellant's second issue is overruled.

## Evidence for Enhancement

In this third issue, Jones contends reversal for a new punishment trial is required because the State's evidence to invoke an enhanced punishment range failed to establish all aspects of the prior conviction to allow enhancement.

## A.    Applicable law

When seeking enhancement based on a conviction of a prior offense, the State must prove beyond a reasonable doubt that the prior conviction exists and that the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). When the State provides prima facie evidence of an enhancement conviction, an appellate court will presume the conviction is final if the record is silent about finality. *Fletcher v. State*, 214 S.W.3d 5, 8 (Tex. Crim. App. 2007). If, however, the evidence raises a question of finality, the State has the burden of proof to show that the enhancement conviction was a final conviction. *See id.* When a conviction has been appealed, it is not considered final until it has been affirmed on appeal and the appellate court's mandate has issued. *Henry v. State*, 331 S.W.3d 552, 555 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Consequently, if the State offers proof showing that a prior conviction was appealed, the State must put on evidence proving that a mandate issued. *Id.* at 556; *Ex parte Chandler*, 182 S.W.3d 350, 358 (Tex. Crim. App. 2005).

## B.    As the State concedes, there was legally insufficient evidence of a final conviction for enhancement

The State concedes that the judgments submitted into evidence to support enhancement each contained a notation that the judgments were appealed. The State did not submit any evidence that the judgments were affirmed or that the appellate court's mandates issued. Accordingly, the evidence was insufficient to

support elevating the punishment range under the habitual offender statute. *Fletcher*, 214 S.W.3d at 8; *Henry*, 331 S.W.3d at 555; *see also* TEX. PENAL CODE § 12.42 (enhancement for habitual offenders). Such an error requires reversal. *See Fletcher*, 214 S.W.3d at 9 (reversing intermediate appellate court and holding that appellate court cannot take judicial notice that a mandate issued; instead, the State must be held to its burden to establish finality where evidence exists of an appeal, which then allows the defendant an opportunity to rebut the State's evidence).

We sustain Jones's third issue.

## Conclusion

We reverse the portion of the trial court's judgment imposing a sentence. We affirm the remainder of the judgment of conviction. And we remand for a new punishment trial.

Sarah Beth Landau
Justice

Panel consists of Justices Radack, Landau, and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).

18